UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| EDWARD SANFORD, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 2:12-0056 |
| | ) | Judge Sharp |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, | ) | |
| Defendant. | ) | |

## MEMORANDUM

This is an action under 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA") to obtain judicial review of the denial of short- and long-term disability (STD and LTD) benefits. The case presents the issue of whether Defendant Life Insurance Company of North America ("LINA") could properly determine that, under the language of the applicable Plans, Plaintiff Edward Sanford was not eligible for disability benefits because at the time his injury he had already voluntarily resigned from his job. Given the deferential standard of review which must be utilized, the Court finds that it should and accordingly will grant LINA's "Motion for Judgment on the Administrative Record" (Docket No. 18) and deny Plaintiff's "Motion for Judgment on the ERISA Record" (Docket No. 16).

## I. BACKGROUND

Plaintiff was employed as the Chief Executive Officer/Administrator for LifePoint Hospitals, Inc. and, by virtue of that employment, was covered by both STD and LTD insurance policies underwritten by LINA. By letter dated October 4, 2010, Plaintiff informed his employer that his employment would terminate thirty days hence, unless an agreement was reached as to an earlier

1

date.

On November 3, 2010, Plaintiff resigned. At the time of his resignation, he had four weeks of accrued Paid Time Off and he continued to be paid his regular salary for the pay periods October 31 through November 27, 2010. From that pay, his employer deducted premiums for disability insurance, as well as premiums for life insurance, medical insurance, vision insurance, and other employee benefits, just as it had on prior payroll checks.[1]

On November 8, 2010, five days after Plaintiff resigned, he flew his plane to Louisiana and, while stepping off the wing, fell approximately three feet to the ground. He went to the hospital the following day and was diagnosed as having suffered an L5 burst fracture in his back which required surgery. He was later found to have compression fractures at other levels of the lumbar spine for which he underwent kyphoplasties on January 7 and February 24, 2010. It was subsequently determined that he had multiple myeloma.

In April 2011, Plaintiff filed for STD and LTD benefits. By letter dated June 16, 2011, LINA denied LTD benefits, writing:

> Your employer returned records indicating your last day worked was 11/3/2010, and that you had voluntarily resigned effective this same date. Premiums were paid through 11/3/2010, per this same record.
>
> The following clause in the policy refers to the effective coverage and indicates termination of eligibility.
>
> **Termination of Insurance**
> An Employee's coverage will end on the earliest of the following dates:
> 1. the date the Employee is eligible for coverage under a plan intended to replace this coverage;
> 2. the date the Policy is terminated;
> 3. the date the Employee is no longer in an eligible class;

---

[1] Plaintiff did not actually pay premiums for his LTD benefits because he had an earning offset for LTD benefits equal to the LTD benefits deduction.

>    4. the day after the end of the period of which premiums are paid;
>    5. the date the Employee is no longer in Active Service;
>    6. the date benefits end for failure to comply with the terms and conditions of the Policy.
>
>    Because you received treatment (11/8/2010) for a diagnosis that began after your employment ended (11/3/2010), you are not eligible for LTD coverage.

(Docket No. 23-1 at 146). STD benefits were denied by LINA on July 28, 2011, for identical reasons.

Plaintiff appealed the denial of benefits on September 30, 2011, claiming that he continued to pay premiums after his resignation through at least November 27, 2010,[2] and stating that he was receiving his accrued Paid Time Off[3] at the time he became disabled. Shortly thereafter, a LINA Appeals Specialist wrote Wendi Hester, the Senior Director of Compensation and Benefits at LifePoint Hospitals, asking whether Plaintiff "was using vacation time through 11/08/2011," to which she replied:

>    Our records indicate that November 3rd was the last day of employment for Mr. Edwards. When he terminated employment he had 4 weeks of accrued Paid Time Off that was paid to him, but his last day of employment was 11/3.
>
>    I have a message in to the CEO at the facility where Mr. Sanford worked to confirm this.

(Docket No. 23-4 at 31 & 32). A few days later, LINA was informed by Ms. Hester that the CEO had confirmed "that Mr. Sanford's last day of employment was November 3rd" and that she had "obtained a copy of his signed resignation letter indicating the same." (Id. at 31).

---

[2] LINA claims that it refunded (or tried to refund) Plaintiff's post-employment disability insurance premiums after is was determined that he was not eligible for benefits.

[3] The Plans do not define or provide an exception for Paid Time Off. According to an employee handbook, "Paid Time Off (PTO) is an employee benefit which combines traditional vacation, holiday, and sick leave programs into one plan with three components, to provide both employees and the Company a flexible method of scheduling time off with pay." (Docket No. 23-4 at 682).

LINA confirmed its denial of STD benefits by letter addressed to Plaintiff's counsel dated November 22, 2011. In pertinent part, the letter read:

> We have received confirmation from LIFEPOINT HOSPITALS, INC. that November 3, 2010 was the last day of employment for your client. When he terminated employment he had 4 weeks of accrued Paid Time Off that was paid to him, but his last day of employment was November 3, 2010. This means that the November 3, 2010 was the last date that your client was in Active Service.
>
> The medical records from Our Lady of The Lake Regional Medical Center indicate that your client sustain [sic] his injuries on November 8, 2010 after falling from a [sic] airplane wing and was subsequently admitted on November 9, 2010.
>
> The information outlined above falls [sic] indicates that your client was not in Active Service at the time of his injury on November 8, 2010, therefore your client's claim has been denied. Because we determined your client was not in Active Service at the time of injury, we did not continue our evaluation of your client's disability. At this time, your claim has been closed and no benefits are payable.

(Docket No. 23-1 at 158-59).

On December 6, 2011, LINA also denied Plaintiff's claim for LTD benefits. In a letter explaining the decision, LINA wrote:

> We based our decision on Mr. Sanford's claim for benefits upon Policy language and all documents contained in his claim file were viewed as a whole.
>
> We are aware that your client has been off work since November 8, 2010 due to complications from multiple myelomas and compression fracture of the lumbar spine. Please note that according to your client's employer, Lifepoint Hospital, Mr. Sanford's last day of work was November 3, 2010 as your client voluntarily terminated his employment. This information has been confirmed by his employer including the CEO of the facility where your client worked. Mr. Sanford's employer also has a signed and dated letter of resignation indicating November 3, 2010 as his last date of employment.
>
> Additionally, based on the medical documentation you previously provided from MD Anderson Cancer Center dated November 9, 2010, your client was seen for the first time at the request of the Emergency Room staff for evaluation after he injured himself stepping off a plane the day before. The hospital note mentioned that your client was a retired CEO of a hospital in Tennessee. According to the CT Scan dated November 9, 2010, your client suffered a compression fracture of the lumbar spine.

4

> This indicates your client's disability occurred after he had submitted his letter of resignation and that he considered himself a retired employee.
>
> We are also aware that when your client terminated his employment, he had accrued Paid Time Off that way paid to him after he submitted his letter of resignation. The fact that he was paid vacation time he had accrued after submitting his letter of resignation does not entitled [sic] him to benefits under his Long Term Disability policy as according to his policy he is not considered in active service as of November 3, 2010, or the date he submitted his letter of resignation. According to the Lifepoint Hospital's group Long Term Disability policy as your client's Active Service ended on November 3, 2020 his insurance coverage ended as well.

(Docket No. 23-1 at 137).

Plaintiff was informed of his right to again submit an administrative appeal. He opted instead to file this lawsuit challenging the denial of benefits.

## II. LEGAL ANALYSIS

Under 29 U.S.C. § 1132(a)(1)(B), a court's review of a denial of benefits is *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). "'When such authority is granted, the highly deferential arbitrary and capricious standard of review is appropriate," Judge v. Metro. Life Ins. Co., 710 F.3d 651, 657 (6th Cir. 2013) (citation omitted), a review that is "tempered" where there is a "possible conflict of interest," Univ. Hosp. of Cleveland v. Emerson Elec. Co., 202 F.3d 839, 847 (6th Cir. 2000). Here, the parties agree that the relevant Plans grant discretion to the administrator and so LINA's decision is reviewed under the arbitrary and capricious standard.

The arbitrary and capricious standard "is the least demanding form of judicial review of administrative actions," Judge, 710 F.3d at 658, but, as Plaintiff points out, it is not "without some teeth" and "[c]ourts should not be mere rubber stamps who uphold an administrator's decision[.]"

5

(Docket No. 17 at 6). Indeed, the Sixth Circuit has recently observed that this "seems to have become the *cri de guerre* of ERISA plaintiffs nearly every time the arbitrary and capricious standard is at hand" and, "[i]n recent years, the standard is seldom recited in this circuit without the invocation of teeth and rubber stamps." McClain v. Eaton Corp. Disability Plan, 740 F.3d 1059, 1064 (6th Cir. 2013). Nevertheless,

> though the standard is not without some teeth, it is not all teeth. An "extremely deferential review," to be true to its purpose, must actually honor an "extreme" level of "deference" to the administrative decision. "A decision reviewed according to the arbitrary and capricious standard must be upheld if it results from a deliberate principled reasoning process and is supported by 'substantial evidence." Schwalm v. Guardian Life Ins. Co. of America, 626 F.3d 299, 308 (6th Cir. 2010) (quoting Baker v. United Mine Workers of Am. Health & Ret. Funds, 929 F.2d 1140, 1144 (6th Cir. 1991)). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Shields v. Reader's Digest Ass'n, Inc., 331 F.3d 536, 541 (6th Cir. 2003) (quoting Davis v. Kentucky Fin. Cos. Ret. Plan, 887 F.2d 689, 693 (6th Cir. 1989)).

Id. at 1064-65. In other words, "a decision regarding eligibility for benefits is not arbitrary and capricious if the decision is 'rational in light of the plan's provisions." Spangler v. Lockheed Martin Energy Sys., Inc., 313 F.3d 356, 361 (6th Cir. 2002) (quoting Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir.1988)).

In determining whether an administrator's decision is arbitrary and capricious, this Court is limited to reviewing the administrative record as it existed when the decision denying benefits was made. Moon v. Unum Provident Corp., 405 F.3d 373, 379 (6th Cir. 2005). "If the administrative record so limited can support 'a reasoned explanation' for [the administrator's] decision, the decision is not arbitrary and capricious." Id.

LINA has supplied a reasoned explanation for its decision to deny benefits: Plaintiff had voluntarily resigned from his job before the injury occurred and thus was not eligible for benefits

6

under the terms of the Plans. This was rational in light of the Plans' provisions and is fully supported by the administrative record.

As noted in the original denial-of-benefits letter, the Plans contain several termination of insurance provisions that state when coverage will end, including "the date the Employee is no longer in an eligible class." (Docket No. 23-1 at 146). There are three classes of employees under the Plans. Class 1, to which Plaintiff belonged,[4] provided that "Eligible Employees" include "[a]ll active, Full-time Employees regularly working a minimum of 32 hours per week and all active Part-time Employees as defined by the Employer's Personnel Policy regularly working a minimum of 20 hours per week[.] (Id. at 201).

Another termination of insurance date is "the date the Employee is no longer in Active Service." (Id. at 146). Under the Plans,

> An employee is in Active Service on a day which is one of the Employer's scheduled work days if either of the following conditions are met.
>
>> 1. The Employee is performing his or her regular occupation for the Employer on a full-time basis. He or she must be working at one of the Employer's usual places of business or at some location to which the employer's business requires an Employee to travel.
>>
>> 2. The day is a scheduled holiday or vacation day and the Employee was performing his or her regular occupation on the preceding scheduled work day.
>
> An Employee is in Active Service on a day which is not one of the Employer's scheduled work days only if he or she was in Active Service on the preceding scheduled work day.

(Id. at 191).

Plaintiff argues that he was eligible for benefits because he was on vacation at the time of his

---

[4] "Class 1" is the default provisions for those employees who do not work at the Northeastern Nevada Regional Hospital facility ("Class 2") or at the Los Alamos facility ("Class 3").

7

injury, and an employee who is on "vacation" is considered to be active. This may not be a fair characterization of the record for at least two reasons. First, according to his former employer Plaintiff was on Paid Time Off at the time of his injury, and it is not *per se* unreasonable for a third party administrator to rely on representations made by the employer. See Frazier v. Life Ins. Co. ov No. Am., 725 F.3d 560, 569 (6th Cir. 2013) ("LINA reasonably consulted with [employer] to ascertain [plaintiff's] job duties"); Stiltz v. Metro. Life Ins. Co., 244 F. App'x 260, 264 (11th Cir. 2007) (administrator was entitled to rely on employer's job description in determining whether plaintiff could perform duties); Rose v. Broadspire Serv. Inc., 2004 WL 34543098, at *9 (S. D. Ohio Dec. 16, 2005) (same). Second, Plaintiff repeatedly states that the Plans provide that employees on vacation are deemed to be in active service when, in fact, the Plans reference "a *scheduled* holiday or vacation day." (Docket No. 23-1 at 191) (emphasis added).

Regardless, it was not arbitrary and capricious for LINA to conclude that Plaintiff was not on "vacation" for purposes of the Plans' provisions. Vacation is not defined in the plan. "In interpreting a plan, the administrator must adhere to the plain meaning of its language as it would be construed by an ordinary person," and this Court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." Morgan v. SKF USA, Inc. , 385 F.3d 989, 992 (6th Cir. 2004).

Merriam-Webster defines "vacation" as "1. a respite or a time of respite from something; intermission; 2. a. a scheduled period during which activity (as of a court or school) is suspended, b. a period of exemption from work granted to an employee; 3. a period spent away from home or business in travel or recreation; 4: an act or an instance of vacating." "Vacation," Merriam-Webter Online Dictionary, http://www.merriam-webster.com (visited Feb. 25, 2014). Similarly, the primary

definition for "vacation" in the Oxford English Dictionary is "1. freedom, relief, or rest from some occupation, business or activity." "Vacation," Oxford English Online Dictionary, http://www.oed.com (Feb. 25, 2014).

It was not arbitrary or capricious for LINA to determine that Plaintiff was not on vacation because his work was not suspended, he was not on respite, and he was not on rest from his occupation. Rather, at the time Plaintiff was injured, he was retired and had no plans to return to work. Moreover, once Plaintiff voluntarily resigned, he was no longer in an eligible class because he was not regularly working. Further, once Plaintiff resigned, he was not entitled to benefits because, while the "Continuation of Insurance Provision modifies the Termination of Insurance provision to allow insurance to continue under certain circumstances if the Insured Employee is no longer in Active Service," that same provision provides that "[n]otwithstanding any other provision of this policy, if an Employee's Active Service ends due to layoff, termination of employment, or any other termination of the employment relationship, insurance will terminate and Continuation of Insurance under this provision will not apply." (Docket No. 23-1 at 181).

The fact that Plaintiff was not paid a lump-sum and deductions for benefits were made does not alter this conclusion. Even though the Plans contain as a cut-off date "the day after the end of the period of which premiums are paid," the Plans also state that "[a]n employee's coverage will end on the earliest" of several dates, including the date when an employee is not longer in an eligible class and the date when the employee is no longer in active service. Moreover, paying premiums does not equate to eligibility for coverage. See Moss v. Unum Life Ins. Co., 495 F. App'x 583, 594 (6th Cir. 2012) ("Whether [plaintiff] continued to pay the premiums is immaterial" where "[t]he language of the Plan unambiguously states that coverage ends upon termination"); Khan v. American

9

Int'l Group, Inc. , 654 F. Supp. 2d 617, 630 (S.D. Tex. 2009) (collecting cases for the proposition that numerous "courts have upheld the denial of benefits under a policy despite the defendants' acceptance of premiums for that policy").

The Court has reviewed each of the cases relied upon by Plaintiff and finds them to be inapposite. Plaintiff string cites many cases for the proposition "that it is entirely normal, and in no way unusual that unused vacation time at the end of the employment relationship may extend the period of employment for purposes of benefit eligibility or calculation." (Docket No. 17 at 12). However, and as LINA point out, the argument in those cases was either (1) that the employers had a policy permitting employees to add unused vacation time to extend their employment date, Smith v. Ameritech, 130 F. Supp. 2d 876, 879-880 (E.D. Mich. 2000) and Corona v. Chevron Corp., 2008 WL 686747, at *1 (S.D. Tex. Mar. 13, 2008), or (2) that the employer agreed to allow employees to use unused vacation time to extend their employment date, Eastes v. Verizon Comm., 2005 WL 483369, at *1 (S.D. W. Va. Mar. 1, 2005); Keiser v. First Unum Life Ins. Co., 2005 WL 1349856, at *2 (S.D.N.Y. June 8, 2005) and Wooten v. Prudential Ins. Co., 2004 WL 2125853, at *1 (N.D. Cal. Sept. 10, 2004). Here, there has been no showing of either a policy or an agreement which permitted Plaintiff to add unused vacation time (or P.T.O) to extend his employment date beyond the date of his resignation.

Plaintiff also cites several cases which he claims "address[] similar timelines [and] consistently find the individual covered." (Docket No. 17 at 13). For example, he relies upon Hoskins v. Snap-on Inc., 2010 WL 28899074 (N.D. Iowa July 20, 2010), in which the court found that a Plan Administrator acted arbitrarily by not including unused vacation days in determining whether an employee was eligible for disability benefits. However, in that case, and unlike here,

10

when plaintiff was terminated as a part of a reduction in force, he was given a termination letter in which the employer explicitly stated that "[a]lthough your last workday is 10/19/2005, your 10.5 days of vacation extend your last day of employment to 11/3/2005," and that "all Life, Accidental Death and Dismemberment, Disability and Health Benefit, coverage's [sic] provided by Snap-On Incorporated will end on 11/3/2005." Id., at *17. Given the "termination letter, which unambiguously states that [plaintiff] was an employee and entitled to benefits as an employee until November 3, 2005," id., it is little wonder that the court found the denial of a claim for benefits dated October 25, 2005, to be arbitrary.

Plaintiff also relies on Keiser which, as indicated, involved a situation where the employer agreed to allow an extension of the employment date. More specifically, plaintiff and her employer entered into a Resignation Agreement wherein it was agreed that her resignation would be effective as of June 30, 1995, but that, following resignation, she would be "entitled to remain on the [employer's] active payroll, as if [she] were a full-time active employee for a three month severance period through September 30, 1996." Keiser, 2005 WL 1349856, at *2. Plaintiff was injured in an automobile accident on August 30, 1996, a time between her resignation and the end of the severance period. While the court ultimately found plaintiff was not disabled, it determined plaintiff met the eligibility requirements because, pursuant to the Resignation Agreement, plaintiff was considered a full-time employee and because the policy provided "insurance may be continued for the time shown in the policy specifications for an employee . . . given a leave of absence." Id., at *14-15. Here, of course, there was no Termination Agreement; Plaintiff was not considered a full-time employee once he resigned, and he was not considered to be on a leave of absence.

Wooten is another case in which the employer agreed to pay benefits beyond the employee's

11

resignation date. "Both orally and in writing," the employer "confirmed that despite [plaintiff's] 'resignation,' his benefit premiums would be payed through the end of July [2001] and his benefits would remain in effect through July 31, 2001[.]" Wooten, 2004 WL 2125853, at *2. Plaintiff suffered a dissection of his aorta on July 19, 2001. While the LTD policy generally provided that "insurance coverage ends when the employee is no longer actively at work full-time," the policy also provided that "the employee remains covered during absences from work specified by the employer." Id., at *3. Again, there was no agreement in this case that Plaintiff would receive benefits for a specified period of time after he resigned, nor did LifePoint ever indicate to Plaintiff that he would receive STD and LTD benefits after his resignation. In fact, LifePoint thought to the contrary by repeatedly informing LINA that Plaintiff's last day of employment was November 3, 2010.

Finally, Woodson v. Manhattan Life Ins. Co., 743 S.W.2d 835 (Ky. 1987), is readily distinguishable. That case arose after decedent was murdered by his estranged wife and involved coverage under the terms of a group life insurance policy that was decided under Kentucky law. Regardless, while the decedent's resignation letter (prepared by the company) stated that he was resigning from his duties as an "officer and director," it did "not otherwise exclude his status as an employee" and, in fact, "the responsible company official" testified that his "official termination as an employee" would have been after the date he was murdered. Id. at 839. Here, there is no such acknowledgment. To the contrary, LifePoint has consistently maintained that Plaintiff's active employment status ended when he resigned, and so informed LINA.

When all is said and done, this case, as noted at the outset, boils down to a specific legal question: Given LINA's discretion "to interpret the terms of the Plan[s]" and "to decide questions of eligibility" (Docket No. 19-1), was it rational for LINA to conclude that Plaintiff was not eligible

for disability insurance at the time he was injured because he had resigned several days earlier? It certainly was not arbitrary or capricious for LINA to reach that conclusion because when Plaintiff submitted his resignation he clearly intended to end his employment relationship with LifePoint Hospitals. Moreover, at the time of the injury Plaintiff was (1) no longer in Active Service because he was not performing his regular occupation on a full-time basis or on a scheduled vacation from which he intended to return; (2) a member of an eligible class regularly working any number of hours, be it full or part time; or (3) entitled to invoke the Continuation of Insurance Provision. Cf. Thacker v. Schneider Elec. USA, Inc., 2013 WL 5811145, at *3 (6th Cir. 2013) ("Used in the ordinary sense, the words 'actively working' and 'actively at work' denote a functioning employee who is performing her job duties" and "[i]t was thus reasonable for the plan administrator to find that, when [plaintiff] took leave of absence . . . , neither coming to her place of work nor performing any of her job duties thereafter, she stopped 'actively working at the Company'").

### III. CONCLUSION

On the basis of the foregoing, the Court will enter an Order granting LINA's Motion for Judgment and denying Plaintiff's Motion for Judgment.

It is SO ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE